

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

LHE  *271 Cadman Plaza East*
F. #2021R00136  *Brooklyn, New York 11201*

April 22, 2024

By ECF

The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Jebara Igbara
               Criminal Docket No. 22-424 (FB)

Dear Judge Block:

      The government respectfully submits this letter in connection with the defendant's sentencing, currently scheduled for April 24, 2022 at 3 p.m. The government respectfully submits that a custodial sentence within the range set forth in the plea agreement, 97 – 121 months, is appropriate in this case.

I.      Offense Background

      As set forth in the Presentence Investigation Report ("PSR"), this case arises out of the defendant's orchestration of multiple overlapping fraud schemes resulting in millions of dollars of loss to trusting individuals. During the offense period of 2019 – 2021, the defendant maintained a popular social media presence, primarily over Instagram, under the name "Jay Mazini." PSR ¶¶ 11-12. At its height, his Instagram account had nearly one million followers. Id. The defendant portrayed himself as a successful investor and businessman, and also posted material relating to his Muslim faith and portraying himself as religious. He posted videos depicting himself handing out large sums of cash to employees at fast food restaurants and retail stores. He claimed to operate multiple businesses, including an apparel line, Mazini Italy, and a trading academy for individuals looking to trade stocks called Mazini Academy. Id. ¶ 11.

      Igbara used his public persona in furtherance of the charged fraudulent schemes. First, Mazini perpetrated an investment fraud scheme via a company called Halal Capital LLC ("Halal Capaital"). PSR ¶ 14. In early 2019, Igbara became socially acquainted with a small business owner, Individual #1, through a religious event at an Islamic center. Id. The defendant touted his investing prowess to Individual #1 and offered to invest money on his behalf. Id. Individual #1 gave Igbara $100,000 to invest, and shortly thereafter Igbara showed Individual #1 documents that purported to reflect a substantial return. Id. Igbara and Individual #1 then founded

Halal Capital LLC, with the aim of raising money from other individuals to invest via Igbara. Id. The purported investments through Halal Capital would be compliant with Muslim rules regarding investing and debt. Individual #1 solicited investments from his contacts in the Muslim religious community in Brooklyn as well as other small business owners. Id. ¶ 15. The investors were told the money would be used to participate in short-term investment opportunities, in the stock market but also in goods such as electronics and personal protective equipment. Id. The investors paid money to Halal Capital both in cash and by wire transfer. For each opportunity, Igbara would provide Individual #1 with a target return rate, up to 20%. Id. ¶ 16. At the "end" of the purported investment, Igbara and Individual #1 would give investors the opportunity to withdraw, or "roll over" their earnings and keep them in the fund. In total, Individual #1 and Igbara obtained between $8-10 million from investors in Halal Capital.

In reality, Halal Capital was a Ponzi scheme. Igbara did not invest the capital he received via Individual #1 as promised, but instead spent it on luxury vehicles, jewelry, and gambling. He also used some of the money to pay "returns" to earlier investors, and later in the scheme, to pay back loans that third parties had given to him, which he used to keep the scheme afloat. PSR ¶ 17.

In order to continue to make promised payments to Halal Capital investors and to his lenders, Igbara turned to additional fraud schemes, including the Bitcoin Scheme charged in Count Two of the Indictment. PSR ¶ 19. The Bitcoin Scheme was simple; Igbara used his social media accounts to tell prospective investors that he was locked out of legitimate crypto-currency exchanges, but, eager to transact, offered to purchase Bitcoin at prices above the prevailing market price in private transactions. Id. ¶ 20-21. Igbara would obtain the Bitcoin, and then send his victims doctored confirmation statements falsely reflecting that he had wired the promised sums in exchange. Id. He never sent the full balance owed, and instead stole the cryptocurrency.

As his fraudulent schemes started to crumble in and around 2021, individuals began posting on social media that Igbara was a fraudster and a scam artist. On or about March 15, 2021 Igbara requested to meet with one such social media user, and then arranged for two accomplices to abduct and violently attack the user. PSR ¶¶ 26 – 28.



II.    Sentencing Guidelines

In the PSR, the United States Department of Probation calculated Igbara's Guidelines range as follows:

| | |
|---|---|
| Base Offense Level | 33 |
| Plus: Offense of Conviction under 18 U.S.C. § 1956 | +2 |
| Plus: Obstruction of Justice | +2 |
| Minus: Acceptance of Responsibility | -3 |
| Total: | <u>34</u> |

Igbara falls within Criminal History Category I, and therefore Probation has calculated his sentencing Guidelines Range to be 151 to 188 months, to be adjusted for the period Igbara has spent in prison on his related state offense (the kidnapping described above). PSR ¶ 88.

Probation's calculation differs from that set forth in the plea agreement in two ways. First, the plea agreement used the wire fraud guideline, U.S.S.G. § 2B1.1, to calculate the offense level applicable to the group, while the PSR used the money laundering guideline, U.S.S.G. § 2S1.1. This results in the PSR having a 2-level higher base offense level. The government agrees that the PSR is correct in this regard, but nevertheless submits that a sentence within the range provided in the plea agreement of 97 to 121 months is sufficient and not greater than necessary to achieve the goals of sentencing.

Second, Probation added an enhancement for obstruction of justice in relation to the defendant's conduct in kidnapping and attacking the individual who attempted to reveal his schemes on social media. The government respectfully submits that this enhancement should not apply, because the available evidence shows that this individual's objective was to "out" Igbara as a scam artist to the public and to other social media users, and not necessarily to reveal his scheme to law enforcement. Igbara's conduct, intended to punish and deter this individual, was not therefore purposefully calculated to thwart the investigation of the offense of conviction. U.S.S.G. 3C1.1 Application Note 1.

In the defendant's sentencing submission, he notes that under the Guidelines any federal sentence should be reduced by 1,134 days to account for the time Igbara has spent in state custody and should run concurrent to the remaining portion of his state sentence; the government agrees.

III. <u>A Sentence in the Range of 97 – 121 Months is Appropriate</u>

In consideration of the factors applicable to sentencing under 18 U.S.C. § 3553(a), the government respectfully submits that a substantial custodial term is appropriate.

The offense is very serious; indeed the scale of Igbara's fraud is breathtaking. He stole over $8 million from a large number of people, many of whom were recruited from his own religious community. He manipulated a close contact, Individual #1, and scores of people he met over the internet by creating a false persona and touting his (fictional) success. As reflected in the victim impact statements, he has left behind a trail of ruined lives, all in the name of his own greed.

Igbara's individual characteristics reflect both the need for deterrence and reasons for hope that he will change his life at the end of his sentence.  First, Igbara's scheme was shockingly brazen and almost reckless, suggesting that a significant punishment is needed to specifically deter him.  Second, in the course of the offense Igbara engaged in an act of physical violence in order to maintain his "public image" and prevent the house of cards he had built from collapsing before his eyes.  His willingness to resort to physical violence suggests that he poses a danger to the community.   In sum, the government submits that the Guidelines range set forth in the plea agreement of 97 to 121 months is sufficient, but not greater than necessary, to achieve the goals of sentencing.

IV.   Restitution and Forfeiture

The Probation Department received affidavits of loss from some, but not all, of Igbara's victims, and the government has recently identified an additional victim who is preparing an affidavit of loss.  Consequently the government respectfully asks that the Court set a further date for a restitution hearing, and, should the parties reach agreement on a final amount of restitution before that date, the parties can update the Court in advance.

The government does request that the Court order forfeiture in the amount of $10,062,713 as provided in the plea agreement.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/ Lauren Howard Elbert
Lauren Howard Elbert
Assistant U.S. Attorney
(718) 254-7577

cc:   Clerk of the Court (FB) (by ECF)
Defense counsel (by ECF)
Lisa Langone, United States Probation Officer (by Email)

4